# EXHIBIT A



## Renewal Lease Summary

**Date:** May 26, 2022

**Lessor:** LSF9 Master Participation Trust

**Tenant 1 Name:** Christy Dahlen

**Tenant 1 Contact Information:** ████████████

**Tenant 2:** TIMOTHY CALLAHAN

**Tenant 3:**

**Tenant 4:**

**Tenant 5:**

**Guarantor Name:**

**Other Occupants:** DORIS NELSON

**Property Address:** 4941 State Road 73, Marshall, WI  53559

**Lease Start Date:** 11/29/2019

**Lease Expiration Date:** 11/30/2020

**Rent:** $1700.00

**Pet Rent (monthly):** $

**Rent**: $1,874.00

**Pet Rent:**

**Monthly Admin Fee:** $11.00

**Lease Renewal Start Date:** 05/01/2022

**Lease Renewal Expiration Date:** 04/30/2023

**Security Deposit:** $2,550.00

**Pet Deposit:** 0.00

**Concession:** N/A

**Lessor Agent's Address:**     Marketplace Homes
                                1380 E. Jefferson Avenue
                                Detroit, MI 48207

Initials: _____ _____

1

# LEASE AGREEMENT

## Wisconsin

This Lease Agreement ("Lease") is made and entered into on May 26, 2022 ("Effective Date") by and between LSF9 Master Participation Trust ("Lessor") and Christy Dahlen and TIMOTHY CALLAHAN (collectively, whether one or more, whether masculine or feminine, "Tenant").  If more than one tenant, each tenant shall be jointly and severally liable for the obligations of Tenant hereunder.  Subject to the terms and conditions set forth in this Lease, Lessor rents to Tenant, and Tenant rents from Lessor, the premises located at 4941 State Road 73, Marshall, WI  53559. ("Premises").  The Premises shall be occupied only by the above mentioned Tenant and the following occupants: DORIS NELSON. For and in consideration of $10.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Lessor and undersigned Tenant do hereby agree as follows:

1.      **AGENT FOR LESSOR:** Marketplace Homes ("Agent") is authorized to manage the Premises and is authorized to act in all respects for Lessor hereunder including to receive service of process and give and receive notices and demands at the address for Lessor's Agent set forth on the signature page hereof. Agent is authorized to enforce any term of this Lease. Any reference to Lessor under this Lease shall be deemed to include a reference to Agent.

2.      **DEMISE AND CONSIDERATION:** In exchange for valuable consideration including, without limitation, the promise by Tenant to pay to Lessor the rental payments set forth herein, and the performance by Tenant of all of the other terms, conditions and covenants contained in this Lease, Lessor agrees to lease to Tenant and Tenant agrees to lease from Lessor the Premises. All of the terms and conditions of this Lease are consideration for performance hereunder and are not mere recitals.

3.      **INITIAL TERM:** 05/01/2022 to midnight (local time of the Premises) 04/30/2023 (the "Term").

4.      **NOTICES**: All notices hereunder must be given in writing and notices not given in writing

Initials: _____ CAD _____ TRC _____

_____

Document digitally signed using RENTCafe eSignature services. Document ID: ▮

will be considered void and without effect. Any notice provided for herein may be delivered as follows:

    (a) <u>If by Tenant to Lessor</u>: By mailing the same by ordinary United States mail to the office of Lessor's Agent or by hand delivery in person to Lessor's Agent at the address for Lessor's Agent as set forth on the first page hereof.

    (b) <u>If by Lessor to Tenant</u>: By serving on Tenant in person. Lessor may also give notice to Tenant by emailing said notice to Tenant at the email address provided by Tenant. Tenant hereby agrees that any notice emailed to Tenant at the above email address shall be legal notice to Tenant as if personally served.

This provision does not apply to any other provision of this Lease that permits and/or requires that notice be served in a different manner or notices of termination or other types of notice in the event that applicable law would permit or require that notices be served in a different manner.

**5.**      **RENT**: Rent is **$1,874.00** per month. If the Effective Date or the expiration date of this Lease is on the second day through the last day of any month, the rent shall be prorated for that month. All rent payments must be electronic ACH payments, and checks of any kind will not be accepted. Rent must be actually received by Lessor to be considered paid. Tenant acknowledges that all funds received will be applied to the oldest outstanding balance owed to Lessor including, but not limited to, additional rent resulting from late payments of rent, administrative fees, costs and fees associated with a dispossessory action and any other monies then due and payable by Tenant hereunder.

**6.**      **LATE PAYMENT**: Rent is due each month on or before the 1st and is delinquent thereafter. Rent received after 5:00 P.M. on the 5th day of the month will incur a minimum late charge of $100.00, plus an additional $10 per day after the 5th day of the month that Rent is delinquent, up to the maximum amount allowed by law (the "Late Charge"), which Late Charge shall be due and payable to Lessor as additional rent. Late payments will not be accepted unless the total Late Charge amount owed is included. Tenant shall pay to Lessor a service charge of $35.00 due and payable as additional rent for any instrument Tenant presents to Lessor which is dishonored and if dishonored

Initials: 

Document digitally signed using RENTCafe eSignature services. Document ID:

such rent will not be considered paid and will be late and the Late Charge shall be due and payable as additional rent. Payments shall be applied first to accrued late charges, then other charges due (including additional rent), and then rent. Partial payments will not be accepted. No checks of any kind will be accepted. This Lease is subject to an increased rent after the initial term as more fully set forth in Section 7 below. NON-PAYMENT OF RENT WHEN DUE IS A WILLFUL VIOLATION OF THIS LEASE. Without waiving any of Lessor's rights with respect to Tenant's default for late payment of rent, all payments not received by 5:00 P.M. on the 25th of the month will not be accepted without the next month's rent and all charges (including additional rent) included. Tenant acknowledges, agrees and authorizes Lessor to deduct recurring rent payments and any additional rent amounts (including but not limited to late fees and charges) from Tenant's bank account listed in the ACH Recurring Payment Authorization Form. [Notwithstanding anything contained herein to the contrary, before charging a late rent charge to the Tenant, the Lessor shall apply all rent prepayments received from the Tenant to offset the amount of rent owed by the Tenant.]

7.    **RENEWAL TERM**: Either party may terminate this Lease at the end of the term by giving the other party a sixty (60) day written notice prior to the end of the term (the "Automatic Renewal Deadline"). [In accordance with Wis. Stat. § 704.15 and Wis. Admin. Code ATCP § 134.09(3), Lessor may notify Tenant at least fifteen (15) days, but no more than thirty (30) days prior to the Automatic Renewal Deadline, of the automatic renewal provision of this Lease ("Automatic Renewal Notice"). Provided Lessor has delivered the Automatic Renewal Notice, and provided neither party gives written notice of termination, and provided neither party gives written notice of termination, this Lease will automatically be extended on a month-to-month basis, and rent will be increased by 10% of the monthly rent under this Lease, unless Tenant agrees to a renewal lease, in which Tenant is subject to an additional term of 365 days with a possible rental increase.] All of the other terms of this Lease shall remain the same. The additional term shall begin on the first day following the end of the preceding term.

At the time this Lease expires, whether during the initial term or the renewal term, Lessor shall have the right during the last sixty (60) days of such term to enter the Premises with twenty-four (24) hours' notice in order to show the Premises to prospective residents or buyers.

Initials: 

4

Document digitally signed using RENTCafe eSignature services. Document ID:

**8.**     **KEYS**: Lessor agrees to deliver to Tenant keys and other entry devices, including any garage door opener(s) if available, for the Premises. Tenant and Lessor acknowledge the actual type and quantities of keys shall be listed on the Move-In/Move-Out Documents which will be incorporated as part of this Lease upon completion of the Move-In/Move-out Documents.

Example of keys that may be provided: Doors

    Pool

    Garage Door Opener(s)

    Mailbox

    Lockbox

    Other

Tenant shall return all keys and other entry devices provided by Lessor when Tenant vacates the Premises. Should Tenant fail to return said entry devices, Lessor may charge $100.00 per lost or stolen pool access card and $100.00 per lost or stolen gate access card. An additional charge of $25.00 for each lost or stolen door key and $25.00 for each lost or stolen mailbox key will be assessed. An additional charge of $125.00 for each lost or stolen lockbox and $125.00 for each lost or stolen lockbox key will be assessed. Unreturned garage door opener(s) will incur a charge of $50.00 per opener.

**9.**     **RENTER'S INSURANCE:**   [Subject to Wis. Adm. Code § 134.08(6),] Lessor will not be responsible for any loss to personal property due to fire, theft, flood, water leaks, rain, hail, ice, snow, smoke, explosions, interruptions of utilities or any other damages due to an act of nature or otherwise. Tenant agrees to maintain at Tenant's sole cost and expense a standard type of Renter's Insurance issued by a licensed insurance company of Tenant's choice in accordance with the Insurance Addendum attached to the Lease.  The Insurance Addendum is incorporated as part of the Lease by reference herein. Lessor shall be named as an additional insured on any such policy as follows: Christy Dahlen and TIMOTHY CALLAHAN, LSF9 Master Participation Trust and Marketplace Homes.  Proof of insurance will be required prior to renewal.  If at any time Tenant does not carry the insurance as required pursuant to the Insurance Addendum, Tenant shall be in breach of this Lease, and Lessor shall have the right, but not the obligation, to purchase replacement coverage and to charge Tenant a fee payable as additional rent to cover the expense for such insurance as set

Initials: _____

_____

Document digitally signed using RENTCafe eSignature services. Document ID: ████

forth in the Insurance Addendum.

**10.**   **UTILITIES**:  Lessor shall pay utility service providers directly for Tenant's utilities costs. Said utilities include water, sewer, gas, oil, propane, electric and trash. Tenant acknowledges that Tenant shall reimburse Lessor for all utilities and/or services paid for by Lessor on behalf of Tenant. Tenant agrees that a third party biller engaged by Lessor shall bill Tenant monthly for the actual costs paid by Lessor on behalf of Tenant (the "Utility Bill"), and such Utility Bill may also include an administrative charge. The Utility Bill is due monthly, concurrently with rent. Tenant shall pay the Utility Bill in accordance with the Utility Addendum attached to the Lease. The Utility Addendum is incorporated as part of the Lease by reference herein. Tenant shall be solely responsible for procuring and paying the costs for all utilities and services not provided by or through Lessor, including, without limitation, cable television, telephone and internet service.

**11.**   **TENANT RESPONSIBILITIES**:  Tenant agrees to ensure that the Premises is maintained so that the same is returned to Lessor at the expiration of this Lease in substantially the same condition as the Premises exists on the Effective Date, ordinary wear and tear excepted. In addition, Tenant agrees to make maintenance checks at proper intervals on smoke alarms located in the Premises and to report any and all defects in writing to Lessor immediately. In the event that hot water, heating, air conditioning, plumbing or other equipment shall need repair, and Tenant does not notify Lessor in writing of the needed repair or, for any reason that is beyond the control of Lessor, any such utilities require reduction or cut off, Lessor shall not be liable for any damage arising as a result thereof. Tenant shall maintain the Premises, including the fixtures therein, in a clean, sightly and sanitary condition. Tenant agrees to abide by all municipal and state laws and ordinances so as not to create a nuisance and not to conduct or initiate activities which would increase the rate of insurance on the Premises. In addition to, and not in lieu of the foregoing responsibilities, Tenant hereby acknowledges and agrees to the following responsibilities:

(a) Tenant shall (i) keep, and pay the costs associated with, the lawn mowed and edged, the landscaping beds free of weeds, the shrubs trimmed and the trash and grass clippings picked up on a regular basis and (ii) keep, and pay the costs associated with, the Premises being maintained, including yard, lot, grounds, walkways and driveway, clean and free of rubbish, trash and debris.

Initials: _____

Document digitally signed using RENTCafe eSignature services. Document ID:

(b) Tenant shall provide, and pay the costs associated with, monthly and other proper pest control, including, but not limited to, rodent, ants, cockroaches, spiders and other insects.

(c) In freezing conditions in which the outside temperature may drop below 32 degrees Fahrenheit, Tenant shall turn the thermostat regulating the heat serving the Premises in an "on" position and set the same to a minimum of 60 degrees Fahrenheit. Tenant also agrees, in such case, to leave the faucets dripping.

(d) Tenant shall notify Lessor of any dangerous condition or need for maintenance existing in the Premises. Maintenance expenses paid for directly by Tenant are not subject for reimbursement by Lessor. Tenant agrees to maintain the Premises in a neat, sanitary and clean condition, free of trash and debris and shall regularly change the air conditioning filters on a monthly basis.

## 12.    SECURITY DEPOSIT:

Check here if Tenant has already deposited a Security Deposit and no additional deposit is required.

To secure Tenant's performance, Tenant shall deposit with Lessor on the Effective Date an additional sum of **$2,550.00** and such deposit shall be held in an account in the name of Lessor. [Said deposit will be deposited, into a non-interest-bearing escrow or trust account with Wells Fargo Bank which is recognized as a national bank.] Said deposit, without interest, will be refunded to Tenant within [twenty-one (21)] days of Tenant vacating the Premises, whichever shall occur earlier, provided, that Tenant has (a) returned the Premises, openers, mailbox, keys and gate keys/cards to Agent; (b) left the Premises clean and free of damage; (c) left Lessor a valid forwarding address in writing, and (d) is otherwise not in default hereunder in any respect.

Said deposit is to secure Tenant's performance hereunder and shall not limit any liability to Lessor for extraordinary cleaning or repairs necessitated by Tenant's occupancy.

## 13.    DEDUCTIONS FROM SECURITY DEPOSIT: Lessor shall have the right to deduct from the deposit (a) the cost of repairing any damage to the Premises other than normal wear and tear caused by Tenant, Tenant's household and/or their respective invitees, licensees and guests; (b) unpaid rent, utility charges or pet fees; [(c) the cost of any unpaid monthly municipal permit fees

Initials: 

Document digitally signed using RENTCafe eSignature services. Document ID:

assessed against the tenant by a local unit of government under Wis. Stat. § 66.0435(s), to the extent that the Lessor becomes liable for the tenant's non-payment.]

[If any portion of the security deposit is withheld by the Lessor, the Lessor shall, within the twenty-one (21) day period provided above, deliver or mail to the Tenant a written statement accounting for all amounts withheld. The statement shall describe each item of physical damages or other claim made against the security deposit, and the amount withheld as compensation for each item or claim.]

The deposit may be applied by Lessor to satisfy all or part of Tenant's obligations hereunder and such application shall not prevent Lessor from claiming damages in excess of the deposit. It is hereby expressly understood that no part of the deposit is to be construed as a prepayment of rent by Tenant and may not be used to pay rent during any month during the term hereof, including, without limitation, the last month of such term.

**14.    EARLY TERMINATION BY LESSOR**: Lessor may terminate the Lease prior to the lease expiration date.  Lessor shall have the right to terminate the Lease early upon not less than thirty (30) days' notice and upon such termination and Tenant vacating the Premises, Landlord shall credit Tenant with the sum of $1,000.00 ("Early Termination Fee") which shall first be applied against any monies owing from Tenant to Landlord with the balance thereafter being paid to Tenant by Lessor.  In such event Tenant agrees to vacate the Premises subject to the following:

(a) Lessor shall give Tenant written notice of the early termination and to vacate (in which case Tenant shall still owe rent through the notice period); and

(b) After Tenant has vacated the Premises, Lessor shall credit to Tenant the Early Termination Fee to Tenant as liquidated damages for disturbing Tenant's quiet enjoyment of the Premises and for the inconvenience of moving early. This credit will be applied to Tenant's account at the time the Tenant vacates the Premises and shall be included with any applicable security deposit refund. The foregoing shall not relieve the Tenant of his or her responsibilities and obligations regarding any damage to the property.]

**15.    EARLY TERMINATION BY TENANT**: Tenant shall have the right to terminate this Lease early only if (i) Tenant is not in default hereunder at the time of giving notice; (ii) Tenant has

Initials: _____

Document digitally signed using RENTCafe eSignature services. Document ID: █████

strictly complied with all of the provisions of this section; (iii) Tenant continues to pay rent on time and in-full for the months prior to the termination date; (iv) Tenant pays any additional fees due per this section on time and (v) termination is as of the last day of a calendar month. If all of these conditions have been met, Tenant may terminate this Lease by following the procedures set forth below and returning the Premises in a clean and rent ready condition, ordinary wear and tear excepted.

(a) <u>Procedures</u>. To be effective, any notice for early termination must be signed by all Tenants. Tenant's election of early termination shall not relieve Tenant of responsibilities and obligations regarding damage to Premises and/or Property. Tenant shall: (i) Give Lessor no less than sixty (60) days prior notice of the termination; (ii) Comply in ALL respects with the requirements set out in this Section; (iii) Pay one hundred percent (100%) of the total rent that otherwise would have been owed through the termination date (iv) forfeit the security deposit unless otherwise prohibited by law and (v) pay an early lease termination administrative fee equal to one month's rent, not later than thirty (30) days from the date of Notice to Terminate is received.

(b) <u>Military Activation</u>. Notwithstanding any provision to the contrary contained herein, if Tenant is called to active duty in the military during the term of this Lease, Tenant shall present to Lessor the official orders activating Tenant, then and in that event, this Lease shall be controlled by the Servicemembers' Civil Relief Act of 2003, as amended (codified at 50 U.S.C.A. §§ 3901-4043).

(c) <u>Active Military</u>. If Tenant, or an immediate family member of Tenant occupying the Premises, is on active duty with the United States military and Tenant or such immediate family member of Tenant receives, during the term of this Lease, permanent change of station orders or temporary duty orders for a period in excess of three (3) months, then Tenant's obligation for rent hereunder shall not exceed: (1) thirty (30) days' rent after Tenant give notice under this section, and (2) the cost of repairing damage to Premises or Property cause by an act or omission of Tenant. If Tenant is active duty military and presents to Lessor a copy of official orders of transfer to another military location, then and in that event, Tenant shall be required to give Lessor the notice to terminate early as set forth elsewhere herein but shall have no obligation to pay an early lease termination administrative fee or additional rent other than for thirty (30) days after Tenant gives notice

Initials: 

Document digitally signed using RENTCafe eSignature services. Document ID:

under this section.

16.     **RIGHT OF ENTRY:**

(a) <u>Right of Entry</u>. Upon providing 24 hours' notice to Tenant, Lessor or anyone authorized by Lessor may peacefully enter the Premises at reasonable times to provide services hereunder, make needed repairs, inspect the Premises, show the Premises to prospective tenants or buyers, inspectors, fire marshals, lenders, appraisers or insurance agents. Lessor may enter the Premises without notice at any time in the event of an emergency.

(b) <u>Advertising</u>. Lessor may prominently display a "For Sale" or "For Lease" or similarly worded sign on the Premises during the term of the Lease. Lessor may take interior and exterior photographs or images of the Property and use the photographs or images in any advertisements to lease or sell the Premises.

(c) <u>Trip charges</u>. If Lessor has made prior arrangements with Tenant to access the Premises and is denied or is not able to access the Premises because of Tenant's failure to make the Premises accessible, Lessor may charge Tenant a trip charge of $100.

(d) <u>Keybox</u>. A keybox is a locked container placed on the Premises holding a key to the Premises. The keybox is opened by a special combination, key or programed access device so that persons with the combination, key or access device may enter the Premises, even in Tenant's absence. The keybox is a convenience but involves risk (such as unauthorized entry, theft, property damage, or personal injury.)

1) Tenant authorizes Lessor, Agent or Lessor's broker to place on the Premises a keybox containing a key to the Premises (i) during the last 10 days of the Lease term, and (ii) at any time Lessor lists the Premises for sale with a licensed broker.

2) If Lessor or Agent has notified Tenant of its intent to access the Premises to show it to prospective buyers or tenants and is denied or is not able to access the Premises because of Tenant's failure to make the Premises accessible, Lessor may charge Tenant a trip charge of $100.

3) Lessor, Agent, and Lessor's broker are not responsible to Tenant, Tenant's guests, family or occupants for any damages, injuries or losses arising from the use of the keybox unless caused by Lessor, Agent or Lessor's broker.

Initials:  _____

_____

Document digitally signed using RENTCafe eSignature services. Document ID: ███

**17.** **POSSESSION**: If Lessor is unable to deliver possession of the dwelling unit to Tenant, the parties will terminate this Lease without monetary obligation on the part of either party in connection with such termination. Following such termination, the parties may enter into a new lease with respect to the Premises or another property.

**18.** **DEFAULT, ABANDONMENT AND OPTIONS IN EVENT OF BREACH**: In the event that Tenant fails to pay any one or more installment of rent or any other amount owing or accruing hereunder as and when due, or if Tenant uses or permits the Premises to be used for any other purpose than that for which the Premises are hereby let, or if Tenant vacates before the expiration of the term hereunder without the written consent of Lessor or its Agent, or if Tenant violates any of the other terms, conditions or covenants contained herein, or if Tenant otherwise abandons the Premises, and upon the happening of any one or more of said events, Tenant shall be in default hereunder and Lessor or its Agent may, at their option, give notice as required by applicable law in the state where the Premises are located to seek possession of the Premises and terminate this Lease. Lessor's failure to take advantage of any default on the part of Tenant shall not be construed as a waiver thereof, nor shall any custom or practice become established between the parties having the effect of a waiver of any condition or term required by this Lease. Termination pursuant to this Section does not release Tenant from any obligation or liability for future rentals. Lessor is entitled to re-lease the Premises to another tenant for a fair rental and will make efforts to do so, but such effort will not take precedence over Lessor's entitlement to lease other vacant properties first. Tenant will remain liable for all rent incurred until the Premises is re-leased on Tenant's behalf (subject to the next sentence) or the termination of the original Lease term, whichever comes first. If the Premises are re-leased, Tenant shall remain liable for the difference between the rent remaining due under this Lease and the amount Lessor is able to recover by making a good faith effort at reletting the Premises on Tenant's behalf. In the event that Tenant is in default hereunder as set forth herein, in addition to, and not in limitation of, the foregoing, Lessor shall be entitled to exercise all remedies available at law or in equity. Whenever under the terms hereof Lessor is entitled to possession of the Premises, Tenant will at once surrender same to Lessor in as good condition as at the Effective Date, normal wear and tear excepted.

Tenant shall give notice to Lessor of any extended absence in excess of fourteen (14) days no later than

Initials: _____ GAD _____ TRC _____

_____

Document digitally signed using RENTCafe eSignature services. Document ID:

the fifth (5th) day of the absence. In the event that Tenant is absent from the Premises for a period greater than fourteen (14) days, Lessor may enter the Premises with twenty-four (24) hours' notice at reasonable times for inspection or maintenance purposes. In the event of an unexplained absence of Tenant from the Premises for a period of fifteen (15) days or more, the Premises shall be deemed abandoned.

Subject to the foregoing, Tenant agrees that Tenant shall be responsible to Lessor for the rent accruing under this Lease even if Tenant fails to occupy or otherwise abandons the Premises or otherwise defaults hereunder. Tenant further acknowledges that in the event that Tenant does not occupy the Premises or otherwise abandons the Premises or otherwise defaults hereunder Tenant consents to the application of the deposit by Lessor to cover Lessor's costs in preparing the Premises for rental and re-renting the Premises, together with any and all unpaid rent and any related late fees and penalties accruing from the Effective Date.

In the event that the Lease is terminated as a result of Tenant's default hereunder and Tenant was entitled to any rent concession under the Lease, in addition to Lessor's other remedies as set forth herein, Tenant must repay to Lessor the total rent concession upon such termination.

**19.    ALTERATIONS TO BUILDING OR PREMISES**: Tenant hereby agrees not to make any alterations to the building located on the Premises or to the Premises or on or about the Premises connected therewith nor to paint upon, or attach any signs, wires or other structure or apparatus on or to the Premises without the prior written consent of Lessor or Lessor's Agent.

**20.    CONDITION OF PREMISES/NO REPRESENTATIONS**: Tenant (a) has examined the Premises, (b) is satisfied with the physical condition thereof, (c) agrees that taking possession thereof is conclusive evidence of receipt of the Premises in good order, and (d) except as set forth in the attached Wisconsin Disclosure Addendum, agrees that no representation as to condition has been made. Tenant agrees that no promise to decorate, alter or improve the Premises has been made, except such as may be contained in this Lease, if any. Any written agreement to decorate, alter or improve the Premises to the extent unperformed shall not carry forward and shall not be made a part of any extension or renewal of this Lease. Tenant hereby acknowledges and agrees that at no time

Initials: _____

Document digitally signed using RENTCafe eSignature services. Document ID:

during the course of discussions and/or negotiations leading up to and including the time of execution of this Lease did any representative, agent or employee of Tenant or Agent make any representation(s), engage in any discussion(s) of the Lease, or otherwise communicate with Tenant, anything that in any way whatsoever contradicts any written term and/or condition of this Lease, nor did Lessor, any representative, agent and/or employee of Lessor or Agent make any statement(s) or communication(s) or representation(s) of any nature whatsoever that supplement or in any way whatsoever amend or add any terms or provisions to this Lease as written. **Tenant hereby acknowledges that Tenant has read this Lease in its entirety and is fully informed of all contents hereof. Notwithstanding anything contained herein to the contrary, nothing in this Section shall be considered a waiver of Lessor's statutory or legal obligation to deliver the Premises in a fit or habitable condition.**

21.    **DAMAGES TO PREMISES**: Tenant shall be responsible for, and pay the expenses associated with, replacing all glass broken and any keys lost or broken and the expenses for repairs of any condition caused by Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests. Tenant shall notify Lessor's Agent immediately upon the occurrence of any event causing Tenant to be required to perform as set forth in the immediately preceding sentence. If Tenant does not remedy the condition requiring it to perform hereunder within seven (7) days of the occurrence thereof (as determined by Lessor), Lessor shall be entitled, but not obligated, to perform the same on Tenant's behalf and, as a result thereof, Tenant shall be liable for all reasonable costs incurred in connection therewith and shall pay to Lessor such costs immediately upon demand therefor.

Tenant shall commit no waste of or on the Premises nor allow the same to occur, and Tenant shall take good care of the same. Tenant is and shall be responsible and liable for any injury and damage done to the Premises by Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests, reasonable wear and tear excepted.

Tenant shall on the expiration of this Lease surrender to Lessor the quiet and peaceable possession of the Premises in like good order as at the Effective Date, reasonable wear and tear excepted, and shall not remove any item which has been affixed to the Premises so as to damage or injure the Premises and

Initials: 

13

shall be liable for any and all damages caused by Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests. Other than as required to be performed by Tenant hereunder, Lessor shall make all repairs to the Premises so that the Premises are kept in a habitable condition unless the reason for such repairs is as a result of the act or inaction of Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests.

22.    **FIRE, CASUALTY OR CONDEMNATION**: Subject to Wis. Stat. § 704.07(4), in the event of damage or destruction to the Premises by fire, water or other hazard, or in the event of malfunction of equipment or utilities, Tenant shall immediately notify Lessor. If the damages are such that occupancy of the Premises as a whole can be continued, Lessor shall make repairs as needed (to the extent Lessor receives adequate insurance proceeds) with reasonable promptness and rent shall not abate during the period of such repairs. If only part of the Premises is rendered unusable by the damage or destruction, Tenant may vacate only that portion of the Premises rendered unusable and Tenant's rent shall be reduced by the fair market value of the unusable portion of the Premises during the period of partial vacancy, provided, that the damage or destruction was not caused by Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests, but in all other respects the terms and provisions hereof shall continue in full force and effect.  In any event, if the damages resulted from the wrongful or negligent acts of Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests, Lessor may pursue all of its remedies against Tenant provided under applicable law. If, in Lessor's reasonable opinion, the Premises are so damaged or destroyed other than by the wrongful or negligent acts of Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests so as to substantially impair Tenant's enjoyment of the Premises, this Lease may be terminated by either Lessor or Tenant in which event Tenant shall vacate the Premises within seven (7) days of receiving notice by Lessor or giving notice to Lessor. In the event that the Premises are damaged or destroyed so as to substantially impair Tenant's enjoyment of the Premises due to the wrongful or negligent acts of Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests, Lessor may, in addition to Lessor's other remedies under applicable law, terminate this Lease by providing Tenant with a seven (7) day notice to vacate, in which event Tenant shall vacate the Premises within seven (7) days of receipt of the notice.

Initials: _____  GAD  _____  TRC  _____

_____

Document digitally signed using RENTCafe eSignature services. Document ID:

If the whole or any part of the Premises shall be taken by Federal, State, County, City or other authority for public use or under any statute, or by right of eminent domain, or by condemnation, then, when possession shall be taken thereunder of the Premises, or any part thereof, the term hereby granted and all rights of Tenant hereunder shall immediately cease and terminate, and Tenant shall not be entitled to any part of any award that may be made for such taking, nor to any damages thereof except that the rent shall be adjusted as of the date of such termination of this Lease.

**23.    PERSONAL PROPERTY:** If Tenant leaves any personal property in the Premises after the termination of this Lease for any reason whatsoever, Lessor has no duty to store or protect said personal property and is entitled to dispose of said personal property without obligation at Tenant's expense.

**24.    USE AND DISCLOSURE OF OCCUPANTS**: The Premises shall be used for residential purposes only and shall be occupied only by the person(s) named on this Lease. Tenant hereby agrees that the Premises are to be occupied only by those persons specifically identified within this Lease or in the Application (as defined hereinafter). If any other person resides with Tenant or within the Premises for more than ten (10) days in any thirty (30) day period, without prior written authorization from Lessor, Lessor has the right to declare this Lease in default. Failure of Tenant to comply with this provision is considered a material noncompliance with and default under this Lease and Lessor may deliver written notice to terminate this Lease.

**25.    ABANDONED AND INOPERABLE VEHICLES**: Should a vehicle remain at the Premises subsequent to the expiration of the term of this Lease or beyond termination of this Lease, Lessor shall have the right to have the vehicle removed. Any vehicle which is left at the Premises subsequent to the expiration or termination of this Lease shall be agreed to be "abandoned". Lessor may tow the vehicle at Tenant's expense, and, at Lessor's option, such failure to remove the vehicle shall constitute a material noncompliance with and default under this Lease, and Lessor may exercise its rights to terminate this Lease.

**26.    HOLDOVER CLAUSE**: If either Lessor or Tenant sends a notice of non-renewal hereunder as permitted hereby or this Lease otherwise terminates as set forth herein and Tenant remains or

Initials: _____GAD_____   _____TRC_____

_____

Document digitally signed using RENTCafe eSignature services. Document ID: ▮▮▮

continues to be in possession of the Premises or any part thereof after the expiration or termination of this Lease without the consent of Lessor, said holdover shall be considered willful and not in good faith, and Lessor, in addition to any other remedies set forth herein, shall be entitled to recover an amount equal to three (3) months' rent or actual damages, whichever is greater, and any other charges allowed by applicable law in the state where the Premises are located until the Premises are delivered to Lessor as required hereby.

**27.    NON-REFUNDABLE ADMINISTRATION FEE**: Tenant agrees to pay a "Monthly Administration Fee" to Lessor in the amount of $11.00 per month to defray the costs of administering utilities and the online tenant portal, to be paid concurrently with rent. This Monthly Administration Fee cannot be used to defray Tenant's obligation for damages and costs Lessor incurs for any damages to the Premises.

**28.    ENTIRE AGREEMENT**: This Lease, and any applicable rules referenced herein or applicable to the Premises, along with all Addenda attached hereto, and the Application, set forth all of the covenants, promises, conditions and understandings between Lessor and Tenant concerning the Premises and there are no other covenants, promises, conditions and/or understandings, either oral or written, between Lessor and Tenant. No modification, limitation or extension of this Lease shall be valid unless executed in writing and signed by all parties hereto. This Lease may be executed by the parties in separate counterparts, each of which when executed and delivered shall be an original for all purposes, but all of which, when taken together, shall constitute one and the same instrument. For all purposes herein, an electronic or facsimile signature shall be deemed the same as an original signature; provided, however, that all parties agree to promptly re-execute a conformed copy of this Lease with original signatures if requested to do so by the Lessor's mortgage lender or the other party.

**29.    SEVERABILITY**: The provisions of this Lease are completely severable and if one provision or more shall be found to be unconscionable or unenforceable for any reason whatsoever, such finding shall not be effective to void any other provision, all of which shall remain in full force and effect to the extent allowed under applicable law.

Initials: 

16

30. **INDEMNITY**: Tenant agrees to defend, indemnify and save harmless Lessor from any and all liability, loss, claim, demand, cost, expense and/or damage (including, without limitation, costs and expenses of attorneys through all appeals of counsel of Lessor's choosing) arising from any nuisance made or suffered on the Premises by Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests or from any carelessness, neglect or improper conduct of any such persons or breach of any of Tenant's obligations hereunder. Subject to Wis. Adm. Code § 134.08(6), all personal property and any part of the Premises within the control of Tenant shall be at the sole risk of Tenant. Lessor shall not be liable for damages to or loss of property of any kind which might be lost, stolen, damaged or destroyed by fire, water, steam, defective refrigeration, elevator or otherwise while on the Premises or for any personal injury unless caused by the negligent acts or omissions of Lessor. In addition, Tenant shall reimburse Lessor promptly for the cost to Lessor for property damage to the Premises and any applicable common areas, including, without limitation, the cost of repairs or service (including plumbing trouble) caused by Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests. Tenant shall be responsible for any such damage resulting from windows or doors left open. Payment of all amounts due Lessor under this provision or this Lease is due and payable within five (5) days of delivery of written notice to Tenant. All amounts due hereunder are deemed additional rent.

31. **ATTORNEYS' FEES:** In the event that any legal action is commenced concerning this Lease, or any breach hereof, or arises out of the possession of the Premises by Tenant, the prevailing party in such action shall be entitled to recover all court costs and reasonable attorneys' fees in such action through all appeals unless otherwise prohibited by law.

32. **TENANT'S APPLICATION**: Tenant's application (the "Application") for this Lease is made a part of this Lease. Tenant hereby states that the information given by Tenant in the Application is true, complete and correct. As part of the Application, Tenant certified and warranted to Lessor that Tenant was not a convicted sex offender and Tenant hereby again warrants and certifies that Tenant and no members of Tenant's household is a convicted sex offender. Tenant understands that Lessor relies on such representation to comply with applicable laws. If any information contained in the Application is false, then, in consideration of Lessor's reliance upon the Application, any false representation shall be considered a material breach of this Lease and Lessor

Initials: 

Document digitally signed using RENTCafe eSignature services. Document ID:

may deliver written notice to terminate this Lease pursuant hereto. Tenant shall notify Lessor of any change in the information given in the Application.

33.   **POOL**: If there is a swimming pool, spa and/or hot tub ("Pool") on the Premises, Tenant agrees as follows:

(a) Tenant will use the Pool at Tenant's own risk. Tenant will be responsible for the proper use of the Pool, including, but is not limited to, keeping the Pool clean of debris and keeping the Pool area clean, neat and organized.  Tenant must operate the Pool in accordance with the manufacturer's instructions and in a safe, responsible manner.  Tenant is responsible for keeping any and all gates locked and Pool area secured at all times. No pets of any kind are permitted in the Pool at any time. Tenant agrees to refrain from attempting to make any repairs or adjustments to Pool equipment or to any electrical wiring for Pool equipment. Tenant must immediately notify Lessor of any repair that the swimming pool/hot tub may require. Tenant is responsible for the full cost that may be due for repair and/or replacement of the Pool that is required as a result of negligence by Tenant or Tenant's occupants or guests.

(b) No children under 18 years of age shall swim or sit in the Pool without continuous adult supervision.

(c) Tenant understands that Lessor has contracted with a third-party vendor to service the Pool during the Term of this Lease. Tenant agrees to allow Lessor and its vendors access at regular times to maintain the Pool and Pool equipment.  Tenant shall be responsible for all costs and fees paid to such third-party vendor in connection with the servicing or maintenance of the Pool.  In the event that Lessor pays any such costs and fees, Tenant shall reimburse Lessor for such payment no later than the date on which the next month's rent payment becomes due and payable.

(d) Tenant understands that the Pool is strictly an amenity and that the use of this amenity is not guaranteed under the terms of the Lease. Any interruption or non-availability of the use of the Pool will not violate any terms of the Lease.

(e) Lessor will not be held responsible for any injuries sustained by Tenant or Tenant's occupants or guests when using the Pool, and Tenant will indemnify Lessor for any actions resulting from injuries to Tenant or Tenant's occupants or guests.

Initials: _____

_____

Document digitally signed using RENTCafe eSignature services. Document ID:

(f) A violation of any rule regarding the Pool or use thereof by Tenant will be considered a material default under this Lease. In such an event, Lessor may initiate legal proceedings to evict or have Tenant removed from the Premises, as well as seek judgment against Tenant for any monies owed to Lessor as a result of Tenant's default.

**34.    MORTGAGEE'S RIGHTS**: Tenant's rights under this Lease shall, at all times, be automatically subordinate and junior to any existing or future mortgage, deed of trust or other lien applicable to the Premises. If requested, Tenant shall execute promptly any document that Lessor may reasonably request to verify this subordination agreement.

**35.    SECURITY POLICY**: Lessor shall not provide, nor does Lessor have any duty to provide for Tenant, security services for the protection of Tenant or Tenant's property. Tenant hereby acknowledges that Tenant understands the foregoing, and Tenant shall look solely to the law enforcement agencies of the county or municipality in which the Premises is located for Tenant's protection. It is agreed and understood that Lessor shall not be liable to Tenant for any damages, injuries or wrongs sustained by others, or property of same from criminal or wrongful acts of third parties, that may cause harm to Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests resulting from a negligent, criminal or wrongful act by same. Tenant acknowledges that neither Lessor nor Agent has made any representations, written or oral, concerning the safety of the community or the effectiveness or operability of any security devices or security measures. Tenant acknowledges that neither Lessor nor Agent warrants or guarantees the safety or security of Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests against the criminal or wrongful acts of third parties. Each Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests is responsible for protecting his or her own person and property. Tenant acknowledges that security devices or measures may fail or be thwarted by criminals or by electrical or mechanical malfunction. Therefore, Tenant acknowledges that Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests should not rely on such devices or measures and should protect themselves and their property as if these devices and measures did not exist.

**36.    NON-WAIVER**: Failure of Lessor to insist upon strict, timely compliance by Tenant with

Initials: _____    _____

Document digitally signed using RENTCafe eSignature services. Document ID:

any of the terms and conditions of this Lease shall not amount to nor be construed as nor otherwise constitute a waiver by Lessor of Lessor's right thereafter to insist upon strict and timely compliance by Tenant of any and all terms and conditions of this Lease, including, without limitation, any of the terms and conditions that may not have been enforced strictly by Lessor previously. Acceptance by Lessor of rent after knowledge of any breach of this Lease by Tenant shall not be a waiver of Lessor's right nor construed as an election by Lessor not to enforce the provisions of this Lease pursuant to such a breach. Lessor's failure or delay in demanding damage reimbursement, late payment charges or other sums due Lessor shall not be a waiver of Lessor's right to insist on payment thereof. Lessor may demand same at any time, including without limitation at the time of Tenant's vacating the Premises or thereafter.

**37.    LAW GOVERNING**: This Lease shall be construed by and enforced with, and the validity and performance hereof shall be governed by, the laws of the state of Wisconsin.

**38.    CONSTRUCTION**: This Lease shall not be construed more strongly against any party hereto regardless of who was responsible for its preparation.

**39.    NO CRIMINAL ACTIVITY**: Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests shall not engage in or facilitate criminal activity on or near the Premises, including, but not limited to, violent activity or drug-related criminal activity. Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests shall not permit the Premises to be used for, or facilitate, criminal activity, including, but not limited to, violent criminal activity or drug related criminal activity. Notwithstanding anything contained herein to the contrary, and in accordance with Wis. Adm. Code §134.08(9), nothing in this Section shall allow the Lessor to terminate the tenancy of the Tenant based solely on the commission of crime in or on the Premises if the Tenant, or someone who lawfully resides with the Tenant, is a victim as defined in Wis. Stat. § 950.02(4) of that crime.

**40.    COMPLIANCE WITH LAWS AND APPLICABLE RULES AND REGULATIONS, ETC./PARTICULAR PROVISIONS RELATING TO HOMEOWNER'S ASSOCIATIONS**: Tenant and anyone in Tenant's household and their respective invitees, licensees and guests shall comply with and abide by all applicable federal, state and local laws, rules, regulations and

Initials: 

Document digitally signed using RENTCafe eSignature services. Document ID:

ordinances affecting in any way the Premises and the rules and regulations now or hereafter promulgated by Lessor and any association in which the Premises may be subject and any covenants, conditions and restrictions and other instruments recorded in the applicable public records. Tenant agrees not to engage in any activity in or about the Premises and the community in which the Premises are located, including any common areas, of an illegal nature, purpose or intent. Tenant further agrees that Tenant and anyone in Tenant's household and their respective invitees, licensees and guests shall not be loud, boisterous or disorderly, nor shall they individually or collectively in any way whatsoever disturb the rights, comforts and conveniences of other residents of the community in which the Premises are located. Tenant shall be responsible for the conduct of Tenant and/or anyone in Tenant's household and/or their respective invitees, licensees and guests. Lessor and Lessor's Agent reserve the right, as allowed by applicable law, to amend and/or add rules, regulations and policies which Agent deems necessary to effectively manage the Premises.

In the event that the Premises are part of a homeowner's association community, Tenant is subject to all of the documents, rules and regulations applicable thereto, including, without limitation, the declaration recorded in the official records of the county in which the Premises is located and the rules and regulations of such homeowner's association. Tenant agrees to comply with and be bound by all of such documentation and any other rules, regulations and obligations imposed by such homeowner's association. If applicable, the monthly assessments arising from such homeowner's association shall be paid directly by Lessor and are included in the rent. Tenant shall provide prompt written notice to Lessor's Agent if Tenant receives any notice of violation of any of the documents, rules and/or regulations of such homeowner's association. Tenant acknowledges and agrees that (a) all rights and obligations of such homeowner's association are derived from, and to the extent provided in, the applicable homeowner's association documents, rules and/or regulations and not from anything contained in this Lease, express or implied and (b) Tenant shall have no voting rights in such homeowner's association. Tenant shall directly pay to such homeowner's association all fees incurred as a result of Tenant's and/or anyone in Tenant's household and/or their respective invitees, licensees and guests' violation or failure to comply with any of the applicable homeowner's association documents, rules and/or regulations and/or other instruments of record and shall notify Lessor within three (3) days of Tenant's receipt of any notice of such violation. Tenant specifically authorizes Lessor to charge Tenant for all unpaid fees incurred as a result of Tenant's and/or anyone in Tenant's

Initials: _____

Document digitally signed using RENTCafe eSignature services. Document ID:

household and/or their respective invitees, licensees and guests' violation of or failure to comply with any of the applicable homeowner's association documents, rules and/or regulations and/or other instruments of record as additional rent.

**41.    SUB-LETTING/ASSIGNMENT**: Tenant will not sublet or assign the Lease without the prior written consent of Lessor which may be granted or withheld in Lessor's sole and absolute discretion. In the event that Lessor allows subletting or an assignment of this Lease (which it has no obligation to do), Tenant shall nevertheless remain liable to Lessor for all of the terms, conditions and covenants of this Lease, including, but not limited to, the payment of rent. In the event Lessor sells, assigns, conveys, or otherwise transfers its interest to this Lease, other than a transfer for security purposes, Lessor shall automatically be relieved of all obligations and liabilities accruing hereunder and which relate to the period from and after the effective date of said transfer, provided that any Security Deposit or other funds of Tenant then being held by Lessor are delivered to Lessor's successor. The obligations to be performed by Lessor hereunder shall be binding on Lessors' successors and assigns only during their respective periods of ownership.

**42.    WATERBEDS**: No waterbeds may be filled without proof of Tenant's liability insurance listing Lessor and Agent as loss payee and written permission of Lessor's Agent.

**43.    WAIVER OF JURY TRIAL**: Lessor and Tenant hereby waive their right to demand a jury trial in any cause of action arising between Lessor and Tenant concerning this Lease or in any way relating hereto.

**44.    Intentionally delete.**

**45.    ADDENDA**: The following Addenda are attached hereto and made a part of this Lease as if fully set forth herein. In the case of any conflict between the provisions of the Addenda attached hereto and made a part hereof and any provisions of this Lease, the provisions of such Addenda shall govern, and should any term or provision of such Addenda be ruled invalid or unenforceable by a court of competent jurisdiction, the remainder of such Addenda shall remain in full force and effect.

- Lead Disclosure Addendum
- Smoke Detector Addendum

Initials: _____

_____

Document digitally signed using RENTCafe eSignature services. Document ID:

- Pet Addendum

- Mold Addendum

- Utility Payment Addendum

- Insurance Addendum

- Wisconsin Law and Disclosures Addendum

- Non-standard Rental Provisions Addendum

- HOA Rules and Regulations Addendum

[SIGNATURE PAGE FOLLOWS]

Initials: _____

_____

Document digitally signed using RENTCafe eSignature services. Document ID: ██

IN WITNESS WHEREOF, THE PARTIES HAVE HEREUNTO EXECUTED THIS LEASE AS OF THE EFFECTIVE DATE FIRST SET FORTH ABOVE:

_____          _____          _____
Lessor Name                      Lessor Signature                 Date Signed

or Authorized Signer on my Behalf:

Trowbridge Realty Corporation dba Marketplace Homes
1380 E. Jefferson Avenue
Detroit, MI 48207
www.marketplacehomesrentals.com
WI Firm License: ██████

Tenant will receive a copy of the Lease via e-mail at the time that all parties to the Lease have executed the Lease. The date on which such email shall be sent is the latest date indicated beside a Tenant's signature below. Tenant acknowledges that a copy of the Lease delivered via electronic mail shall be deemed an original and shall satisfy any delivery requirements under state law.

Printed Name:   Christy Dahlen
_____                   05/26/2022
Tenant Signature                          _____
                                          Date Signed

Printed Name:   TIMOTHY CALLAHAN
_____                   05/26/2022
Tenant Signature                          _____
                                          Date Signed

Initials: _____

Document digitally signed using RENTCafe eSignature services. Document ID: ██████

Printed Name: _____

_____          _____
Tenant Signature                                                      Date Signed

Printed Name: _____

_____          _____
Tenant Signature                                                      Date Signed

Printed Name: _____

_____          _____
Tenant Signature                                                      Date Signed

Printed Name: _____

_____          _____
Guarantor Signature                                                Date Signed

Initials: ___GAD___ ___TRC___ _____

_____

Document digitally signed using RENTCafe eSignature services. Document ID: ▮

**All parties agree that the property was built in <u>1980</u>.**

**LEAD DISCLOSURE ADDENDUM**

**<u>Disclosure of Information on Lead-Based Paint Hazards</u>**

**Lead Warning Statement**

*Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips and dust can pose health hazards if not taken care of properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, landlords must disclose the presence of known lead-based paint and lead-based paint hazards in the dwelling. Tenants must also receive a Federally approved pamphlet on lead poisoning prevention.*

**Lessor's Disclosure.**

**Initials of Lessor or Authorized Agent**

☐ (a)  Presence of lead-based paint or lead-based paint hazards (check one below):  Known lead-based paint and/or lead-based paint hazards are present in the housing.

**X** (b)  Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

☐ (c)  Records and reports available to the lessor (check one below):  Lessor has provided Tenant with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

**X** (d)  Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Tenant's Acknowledgment.**  *GAD*   *TRC*

**Initials of Ten**:

(a) Buyer/Tenant has received copies of all information, if any, listed above.

(b) Buyer/Tenant has read and understands the above lead warning statement and has received the pamphlet "Protect Your Family from Lead in Your Home".

(c) Buyer/Tenant has [check one below]:

Initials: _____*GAD*_____  _____*TRC*_____

Document digitally signed using RENTCafe eSignature services. Document ID: ▬

Received a ten (10) day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or

Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

_____

**Agent's Acknowledgments**

**Initials of Lessor or Authorized Agent**

(a)      Agent has informed the Lessor of the Lessor's obligations under 42 U.S.C. 4582 and is aware of his/her responsibility to ensure compliance.

_____

**Certification of Accuracy**

The following parties have reviewed the Lead Disclosure Addendum and certify, to the best of their knowledge, that the information provided by the signatory is true and accurate.

| | |
|---|---|
| _____ | 05/26/2022 |
| Tenant Signature | Date Signed |
| _____ | 05/26/2022 |
| Tenant Signature | Date Signed |
| _____ | _____ |
| Tenant Signature | Date Signed |
| _____ | _____ |
| Tenant Signature | Date Signed |
| _____ | _____ |
| Tenant Signature | Date Signed |
| _____ | _____ |
| Guarantor Signature | Date Signed |
| _____ | _____ |
| as Agent for Lessor | Date Signed |

Initials: _____

_____

Document digitally signed using RENTCafe eSignature services. Document ID: ███

**SMOKE DETECTOR ADDENDUM**

In accordance with the laws and ordinances of the state in which the Premises are located, this Smoke Detector Addendum is prepared to give Tenant instructions as to the care of a smoke detector and additional safety information and is made a part of the Residential Lease Agreement ("Lease") between the Lessor and Tenant. For Tenant's safety, Tenant should take good care of the smoke detector(s) in the Premises by replacing batteries and/or maintaining power to the smoke detector(s). Tenant is responsible for any damage done to the smoke detector(s). If the smoke detector(s) is defective, Tenant should notify Agent of such defects in writing.

**BATTERY OPERATED DETECTOR**

IF THE SMOKE DETECTOR(S) IS BATTERY OPERATED please follow the instructions below:

(a) The alarm horn and the indicator light on the smoke detector lets you know whether the smoke detector is working.

(b) When the indicator light, which you can see though the clear push button of the test switch, flashes once a minute, the smoke detector is operating normally. Some models have a white push button and do not flash.

(c) When the alarm is sounding, the smoke detector has sensed smoke or combustion particles in the air. The alarm will automatically turn off when the smoke in the air is completely gone.

(d) If the alarm horn beeps once a minute, the smoke detector's battery is weak and needs to be replaced immediately.

**To keep your detector in good working order, you should:**

(a) Test the smoke detector regularly (weekly is recommended) by pressing the test switch for up to 10 seconds until the alarm sounds.

(b) Replace the battery once a year or immediately when the low battery "beep" signal sounds once per minute.

(c) Vacuum the dust off the smoke detector sensing chamber at least once a year. This can be done when you open the smoke detector to replace the battery. Remove the battery before cleaning. Use a soft brush attachment and carefully remove any dust on the smoke detector components especially on the openings of the sensing chamber. Replace the battery after cleaning.

(d) Clean the smoke detector's cover when it becomes dirty. First open the cover and remove the battery, then hand wash the cover with a cloth dampened with mild soapy water, rinse it with a cloth dampened

Initials: _____ _____

Document digitally signed using RENTCafe eSignature services. Document ID: ▮

with clear water and dry it with a lint-free cloth. Be careful not to get any water on the smoke detector components. Replace the battery and close the cover.

(e) Test the smoke detector after closing the cover whenever you have opened it to replace the battery or clean it.

**NOTE**: If the smoke detector does not work properly, make sure the battery is fresh and is connected correctly and that the sensing chamber is clear. **IF THERE IS STILL A PROBLEM, NOTIFY AGENT IN WRITING IMMEDIATELY.**

### ELECTRIC DETECTOR

IF THE SMOKE DETECTOR(S) IS POWER OPERATED please follow the instructions below:

(a) The alarm horn and the indicator light on the smoke detector lets you know whether your detector is working right.

(b) When the indicator light, which you can see through the clear push button of the test switch, glows continuously, the smoke detector is receiving power and operating normally.

(c) When the alarm is sounding, the smoke detector has sensed smoke or combustion particles in the air. The alarm will automatically turn off when the smoke in the air is completely gone.

To keep your detector in good working order, you should:

(a) Test the smoke detector regularly (weekly is recommended) by pressing the test switch for up to 10 seconds until the alarm sounds.

(b) DISCONNECT THE POWER BEFORE FOLLOWING THE CLEANING INSTRUCTIONS BELOW:

　　1) Vacuum the dust off the openings in the smoke detector cover with a soft brush attachment at least once a year.

　　2) Clean the smoke detector's cover when it becomes dirty. Hand wash the cover with a cloth dampened with mild soapy water, rinse it with a cloth dampened with clear water and dry it with a lint-free cloth. Be careful not to get any water inside the cover on the detectors components.

　　3) Test the smoke detector after restoring power whenever you have turned off the power to clean it.

**NOTE**: If the smoke detector does not work properly, make sure the power is on and that the inside of the smoke detector and the openings to the sensing chamber are clear. **IF THERE IS STILL A PROBLEM, NOTIFY AGENT IN WRITING IMMEDIATELY.**

Initials: _____ _GAD_ _____ _TRC_ _____

_____

29

Document digitally signed using RENTCafe eSignature services. Document ID: ████

| | |
|---|---|
| | 05/26/2022 |
| Tenant Signature | Date Signed |
| | 05/26/2022 |
| Tenant Signature | Date Signed |
| Tenant Signature | Date Signed |
| Tenant Signature | Date Signed |
| Tenant Signature | Date Signed |
| Guarantor Signature | Date Signed |
| as Agent for Lessor | Date Signed |

Initials:

Document digitally signed using RENTCafe eSignature services. Document ID:

## PET ADDENDUM

1. Tenant agrees to pay an additional security deposit at the beginning of the Lease term in the amount of $350.00. This amount shall be multiplied by the number of pets. The additional security deposit shall be refunded at Lessor's sole discretion.

2. Lessor and Tenant agree to a three (3) pet maximum with the following conditions:

3. In addition to the additional security deposit amount set forth in paragraph 1 above, Tenant agrees to pay the following non-refundable, monthly pet fee: $35 per each month of the Lease term, multiplied by the number of pets. Payment of this fee in no way compromises the right of Lessor to charge extra for costs and expenses incurred by pet(s) for damages.

4. Only the pet(s) listed and described below are authorized under this Pet Addendum. Additional or other pets must be approved by Lessor.

5. Pet(s) will not cause danger, damage, nuisance, noise or health hazard or soil the Premises or its grounds or any applicable common areas, walks, parking areas, landscaping or gardens. Tenant agrees to clean up after the pet and agrees to accept full responsibility and liability for any damage, injury or action arising from or caused by the pet.

6. Tenant agrees to register and immunize the pet(s) in accordance with local laws and requirements.

7. Tenant warrants that the pet(s) is housebroken. Tenant warrants that the pet has no history of causing physical harm to persons or property, such as biting, scratching and chewing and further warrants the pet has no vicious history or tendencies.

8. The following list of aggressive breeds are not permitted: American Pit-bull Terrier, Doberman Pinscher, Chow Chow, Rottweiler, Bullmastiff, German Shepherd, Presa Canario, Malamute, and Akita.

9. No pet shall be kept in an outdoor kennel, pen, run, or tied-up.

10. Livestock is not permitted on or in the Premises. Livestock includes, but is not limited to, chickens, cows, goats, pigs and roosters.

Initials: _____

Document digitally signed using RENTCafe eSignature services. Document ID:

11. Exotic creatures are not permitted on or in the Premises. Exotic creatures include, but are not limited to, snakes, spiders, lizards and mice.

12. Dogs and cats must be controlled at all times and must be kept on a short leash while in any applicable common areas or on the grounds. Barking will not be tolerated and is considered a nuisance to other occupants of the community in which the Premises are located. Tenant shall clean up pet defecations from the grounds. Proper disposal of cat litter (securely bagged) will be done on a frequent basis. Odors arising from cat litter will not be tolerated.  All pets must comply with all local laws, ordinances and regulations, including but not limited to licensure, inoculation and spay or neutering.

13. Aquariums will not leak and will be cleaned regularly to prevent foul water and/or odor.

14. Tenant agrees to Indemnify and hold Lessor harmless from any liability to third parties that may result from the Tenant keeping such pet.

15. The Tenant shall remove any pet previously permitted within 48 hours of written notification from the Lessor or its Agent that the pet, in the Lessor or its Agent's sole judgment, creates a nuisance or disturbance or is, in the Lessor or its Agent's opinion, undesirable.  If the pet is caused to be removed pursuant to this paragraph, the Lessor shall not be required to refund any pet fees; however, the Tenant shall be entitled to acquire and keep another pet of the type previously authorized.

Initials: _____

Document digitally signed using RENTCafe eSignature services. Document ID: ▮▮▮

**PET DESCRIPTION(S):**

| Type | Breed | Name | Color | Age | Weight |
|------|-------|------|-------|-----|--------|
| Service Dog | Mix | Hero | Black/White | 5 | 70.00 |
| Service Dog | Chihuahua/Grey Hound | Azalea | Tan/Brown | 12 | 6.00 |
| | | | | | |

**Total Pet Deposit:** <u>0.00</u>  **Total Monthly Pet Rent:**

✔ **Check here if this application is not applicable and there will be no pets on the Premises.**

|  |  |
|---|---|
| _(signature)_ | 05/26/2022 |
| Tenant Signature | Date Signed |
| _(signature)_ | 05/26/2022 |
| Tenant Signature | Date Signed |
| | |
| Tenant Signature | Date Signed |
| | |
| Tenant Signature | Date Signed |
| | |
| Tenant Signature | Date Signed |
| | |
| Guarantor Signature | Date Signed |
| | |
| as Agent for Lessor | Date Signed |

Initials: _(initials)_    _(initials)_

Document digitally signed using RENTCafe eSignature services. Document ID: ▮

## MOLD ADDENDUM

This Addendum is attached to and made a part of the Residential Lease Agreement ("Lease") between the Lessor and Tenant for the Premises. In order to minimize the occurrence and growth of mold in the Premises, Tenant hereby agrees to the following:

1. Moisture Accumulation. Tenant shall (a) remove any visible moisture accumulation in or on the Premises, including on walls, windows, floors, ceilings and bathroom fixtures; (b) mop up spills and thoroughly dry affected areas as soon as possible after occurrence; (c) use exhaust fans in kitchen and bathroom(s) when necessary; and (d) keep climate and moisture in Premises at reasonable levels.

2. Property Cleanliness. Tenant shall clean and dust the Premises regularly and shall keep the Premises, particularly the kitchen and bath(s), clean.

3. Leaks. Inspect for leaks in the Premises on a regular basis. Look for discolorations or wet spots.

4. Notification of Management. Tenant shall promptly notify Lessor in writing of the presence of the following conditions:

    (a) Water leak, excessive moisture or standing water inside the Premises;

    (b) A water leak, excessive moisture or standing water in any community common area, if applicable.

    (c) Mold growth in or on the Premises that persists after Tenant has tried several times to remove the same with household cleaning solutions such as Lysol or Pine Sol disinfectants, Tilex Mildew Remover or Clorox.

    (d) A malfunction in any part of the heating, air conditioning or ventilation system in the Premises.

[SIGNATURE PAGE FOLLOWS]

Initials: _____

_____

Document digitally signed using RENTCafe eSignature services. Document ID: ▮▮▮

|  | 05/26/2022 |
|---|---|
| Tenant Signature | Date Signed |
|  | 05/26/2022 |
| Tenant Signature | Date Signed |
| Tenant Signature | Date Signed |
| Tenant Signature | Date Signed |
| Tenant Signature | Date Signed |
| Guarantor Signature | Date Signed |
| as Agent for Lessor | Date Signed |

Initials:

Document digitally signed using RENTCafe eSignature services. Document ID: ███

## UTILITY PAYMENT ADDENDUM

The Utility Addendum is incorporated into the Lease Agreement (referred to in this addendum as the "Lease Contract" or the "Lease") dated May 26, 2022  by and between Marketplace Homes (Landlord, Authorized Agent for Owner) and Christy Dahlen and TIMOTHY CALLAHAN (Tenant) located at 4941 State Road 73, Marshall, WI 53559. This Utility Services Addendum is in addition to all terms and conditions of the Lease. To the extent that the terms of this Utility Addendum conflict with those of the Lease, this Utility Addendum shall control.

1.      Responsibility for payment of utilities, and the method of metering or otherwise measuring the cost of the utility, will be as indicated below.

(a)      Water, Sewer, Gas, Oil, Propane, Electric and Trash service to your dwelling will be billed by the service provider to and paid for by Marketplace Homes and then allocated directly to you for payment monthly based on the exact amount billed by the provider by service type

2.      If a pass through method for trash or other utility service is used, Tenant and Owner agree that the charges indicated on this Agreement (as may be amended with written notice) represent a fair and reasonable amount for the service(s) provided. Tenant agrees that Owner retains the right to request and submit a change of Service Provider without prior notice to the Tenant. Owner agrees that said change of Service Provider will not interfere with the Tenants ability to utilize said services.

3.      When billed by us directly or through our billing company, you must pay utility bills on the 1st day of each month with your rent payment, in accordance with Section 6. "Late Payment" of the Lease Contract. Payment received later than the 5th day of the month is considered late. The late payment of a bill or failure to pay any utility bill is a material and substantial breach of the Lease and we will exercise all remedies available under the Lease, up to and including eviction for nonpayment. To the extent a new account is required, you shall pay a New Account Fee in the amount of $10.00.

4.      You will be charged for the full period of time that you were living in, occupying, or responsible for the payment of rent or utility charges on the dwelling.  If you breach the Lease, you will be responsible for the utility charges for the time period you were obliged to pay the charges under the Lease, subject to our mitigation of damages.

5.      When you vacate the dwelling, you will receive a final bill which may be estimated based on your prior utility usage.  The bill must be paid at the time you move out or the final bill will be deducted from the security deposit.

Initials: _____

Document digitally signed using RENTCafe eSignature services. Document ID: ▮

6.      We are not liable for any losses or damages you incur as a result of outages, interruptions, or fluctuations in utility services provided to the dwelling unless such loss or damage was the direct result of negligence by us or our employees. You release us from any and all such claims and waive any claims for offset or reduction of rent or diminished rental value of the dwelling due to such outages, interruptions, or fluctuations. Tenant agrees not to engage with or contract services through commodity brokers who contract adjustments in utility services, contract rate adjustment savings, or any changes therein to any utility services currently or previously in use and contracted by the owner at this dwelling for the duration of this agreement.

7.      You agree not to tamper with, adjust, or disconnect any utility sub-metering system or device. Violation of this provision is a material breach of your Lease and may subject you to eviction or other remedies available under the Lease, this Utility Services Addendum and at law.

8.      Where lawful, all utility, charges, and fees or any kind under the Lease shall be considered additional rent, and if partial payments are accepted by the Owner, they will be allocated first to the non-rent charges and to rent last.

9.      You agree that you may, upon thirty (30) days prior written notice from Owner to you, begin receiving a bill for additional utilities and services, at which time such additional utilities and services shall for all purposes be included in the term Utilities. Satellite, Cable Television, and Telephone service are not labeled or considered as additional utilities or be included in the term Utilities within this agreement.

10.     This Addendum is designed for use in multiple jurisdictions, and no billing method, charge, or fee mentioned herein will be used in any jurisdiction where such use would be unlawful. If any provision of this addendum or the Lease is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this addendum or the Lease. Except as specifically stated herein, all other terms and conditions of the Lease shall remain unchanged. In the event of any conflict between the terms of this Addendum and the terms of the Lease, the terms of this Addendum shall control.

11.     The following special provisions and any addenda or written rules furnished to you at or before signing will become part of this Utility Addendum and will supersede any conflicting provisions of this printed Utility Addendum and/or Lease Contract.

[SIGNATURE PAGE FOLLOWS]

Initials: _____

Document digitally signed using RENTCafe eSignature services. Document ID: ████

_____     05/26/2022
Tenant Signature                      Date Signed
                                      05/26/2022
_____     _____
Tenant Signature                      Date Signed

_____     _____
Tenant Signature                      Date Signed

_____     _____
Tenant Signature                      Date Signed

_____     _____
Tenant Signature                      Date Signed

_____     _____
Guarantor Signature                   Date Signed

_____     _____
as Agent for Lessor                   Date Signed

Initials: _____

Document digitally signed using RENTCafe eSignature services. Document ID: ███

## INSURANCE ADDENDUM

The Insurance Addendum is incorporated into the Lease Agreement (referred to in this addendum as the "Lease Contract" or the "Lease") dated May 26, 2022  by and between Marketplace Homes (Lessor / Authorized Agent for Lessor) and Christy Dahlen and TIMOTHY CALLAHAN  (Tenant) located at  4941 State Road 73, Marshall, WI 53559. This Insurance Addendum is in addition to all terms and conditions of the Lease. The terms used in this Insurance Addendum, if not defined herein, shall have their normal, generally accepted meanings or, if applicable, the meanings given in the Lease Agreement. To the extent that the terms of this Insurance Addendum conflict with those of the Lease, this Insurance Addendum shall control.

For the duration of the Lease, Tenant is required to maintain and provide evidence of either (i) tenant liability insurance (covering personal liability for on-premises bodily injury and damage to Tenant's personal property) or (i) renters insurance (covering damage to Tenant's personal property) ("Required Insurance"). **Notwithstanding anything to the contrary contained herein, Tenant shall not be responsible for, and the Required Insurance shall not include coverage for, (a) personal injury arising from causes clearly beyond the Tenant's control or (b) property damage caused by natural disasters or by persons other than the Tenant or the Tenant's guests or invitees.**  Minimum coverage under Tenant's Required Insurance policy must be no less than:

$100,000 Limit of Liability for Tenant's legal liability for bodily injury and property damage to the Premises. **Note:  resident personal contents coverage is optional and encouraged.**

Tenant is required to furnish Lessor with evidence of Required Insurance prior to occupancy of the Premises and at the time of each lease renewal period, if any. Tenant may obtain Required Insurance from an insurance agent or insurance company of Tenant's choice; provided that such agent or company, as the case may be, is authorized to do business in the State where the Premises is located.  Tenant shall list Lessor as an 'interested party' on any such policy.

**If at any time during the Lease term or any renewal thereof Tenant is not maintaining such Required Insurance, Tenant shall be in breach of the Lease Agreement and, in addition to any other rights and remedies of Lessor, Lessor shall have the right, but not the obligation, to purchase insurance coverage on behalf of Tenant by scheduling the Premises for coverage under the Lessor Placed Tenant Liability Insurance policy ("LPTLI"). The LPTLI shall be in Tenant's name in amounts necessary to satisfy Tenant's obligation hereunder.  To defray the cost of the LPTLI, Lessor, or the Lessor's authorized representative, shall to charge Tenant, as additional rent, the costs paid by Lessor on behalf of Tenant for such LPTLI (currently estimated to be fifteen dollars ($15.00) per month).**

Initials: _____

_____

Document digitally signed using RENTCafe eSignature services. Document ID:

Some important points of this LPTLI coverage, which Tenant should understand are:

1. Lessor is the Named Insured under the LPTLI.  Tenant is an Additional Insured under the tenant liability component of the LPTLI policy for liability arising from on-premises Bodily Injury and Property Damage up to the Limits of Liability appearing above.

2. LPTLI coverage is not personal liability insurance or renters insurance.  Lessor makes no warranty or representation that LPTLI covers the Tenant's personal property (contents) or additional living expenses.  Although coverage may be similar to a personal liability insurance policy or the liability portion of a Renters Insurance Policy, the LPTLI may not protect Tenant as if Tenant had purchased personal liability or renters insurance from an insurance agent or insurance company of Tenant's choice.  Certain restrictions apply.

3. Coverage only applies to liability arising on the Premises.  Tenant is not insured away from the Premises.

4. Coverage under the LPTLI policy may be more expensive than the cost of Required Insurance available to and obtained by the Tenant.  At any time, Tenant may contact an agent of their choice for personal liability or renters insurance options to satisfy the Required Insurance under the Lease Agreement.

5. Licensed insurance agents may receive a commission on the LPTLI policy.

6. As of the date hereof, the estimated fee to cover the expense of LPTLI coverage shall be fifteen dollars ($15.00) per month.

Subject to the terms of the policy, LPTLI will extend legal defense to Tenant in the event of actual or alleged liability for bodily injury or property damage not otherwise excluded by the LPTLI policy.  LPTLI is designed to fulfill Tenant's insurance requirement under the Lease Agreement.

**Scheduling under the LPTLI policy is not mandatory and Tenant may purchase Required Insurance from an insurance agent or insurance company of Tenant's choice at any time and, after providing Lessor evidence of such Required Insurance, coverage under the LPTLI policy on behalf of Tenant will be immediately terminated.**

[SIGNATURE PAGE FOLLOWS]

Initials: _____

_____

Document digitally signed using RENTCafe eSignature services. Document ID:

05/26/2022

_____    _____
Tenant Signature                                        Date Signed
                                                                05/26/2022

_____    _____
Tenant Signature                                        Date Signed

_____    _____
Tenant Signature                                        Date Signed

_____    _____
Tenant Signature                                        Date Signed

_____    _____
Tenant Signature                                        Date Signed

_____    _____
Guarantor Signature                                   Date Signed

_____    _____
as Agent for Lessor                                     Date Signed

Initials: _____

Document digitally signed using RENTCafe eSignature services. Document ID:

# WISCONSIN LAW AND DISCLOSURE ADDENDUM

HABITABILITY DISCLOSURES

In accordance with the laws and ordinances of the State of Wisconsin, including but not limited to Wis. Adm. Code § 134.05, unless otherwise disclosed in the Lease, as of the Effective Date, the Lessor has no actual knowledge of any of the following:

1. Any building code or housing code violation that affects the Premises or common areas associated with the Premises;

2. Lack of functioning hot or cold running water;

3. Plumbing or sewage disposal facilities no in good operating order;

4. The existence of unsafe or inadequate heating facilities (incapable of maintaining at least 67 F in living areas;

5. The lack of electricity or electrical wiring/components in an unsafe operating conditions;

6. Any structural or other condition that creates a substantial hazard to the Tenant's health or safety.

NOTICE OF PRE-EXISTING DAMAGES

1. Within seven (7) days of taking occupancy of the Premises, the Tenant may:

   (a) Inspect the Premises and notify the Lessor of any pre-existing damage or defects.
   (b) Request in writing the Lessor, a list of physical damages or defects, if any, charged to the previous tenant's security deposit.

2. If the Tenant makes a request under paragraph (1)(b) above, the Lessor shall provide the Tenant with a list of all physical damages or defects charged to the previous tenant's security deposit within thirty (30) days' after the Lessor receives the written request, or within seven (7) days after the Lessor notifies the previous tenant of the security deposit deductions, whichever occurs later.

NOTICE OF DOMESTIC ABUSE PROTECTIONS

1. As provided in section 106.50(5m)(dm) of the Wisconsin statutes, a tenant has a defense to an eviction action if the tenant can prove that the landlord/lessor knew, or should have known, the tenant is a victim of domestic abuse, sexual assault or stalking and that the eviction action is based on conduct related to domestic abuse, sexual assault, or stalking committed by either of the following:

Initials: _____

Document digitally signed using RENTCafe eSignature services. Document ID:

(a)   A person who was not the tenant's invited guest.

(b)   A person who was the tenant's invited guest, but the tenant has done either of the following:

    i.   Sought an injunction barring the person from the premises.

    ii.   Provided a written statement to the landlord/lessor stating that the person will no longer be an invited guest of the tenant and the tenant has not subsequently invited the person to be the tenant's guest.

2.   A tenant who is the victim of domestic abuse, sexual assault, or stalking may have the right to terminate the rental agreement in certain limited situations, as provided in section 704.16 of the Wisconsin statutes. If the tenant has safety concerns, the tenant should contact a local victim service provider or law enforcement agency.

3.   A tenant is advised that this notice is only a summary of the tenant's rights and the specific language of the statutes governs in all instances.

05/26/2022
_____
Tenant Signature                  Date Signed
                                      05/26/2022
_____
Tenant Signature                  Date Signed

_____
Tenant Signature                  Date Signed

_____
Tenant Signature                  Date Signed

_____
Tenant Signature                  Date Signed

_____
Guarantor Signature             Date Signed

_____
as Agent for Lessor              Date Signed

Initials: _____

43

Document digitally signed using RENTCafe eSignature services. Document ID: ■

# NON-STANDARD RENTAL PROVISIONS ADDENDUM

## SECURITY DEPOSIT WITHHOLDING

**Initials of Tenant**

1. In addition to those deductions provided for under Section 12 and 13 of the Lease, the Lessor may withhold from the full amount of the security deposit those amounts necessary to pay for any of the following:

    (a) the cost of repairing any damage to the Premises other than normal wear and tear caused by Tenant, Tenant's household and/or their respective invitees, licensees and guests;

    (b) unpaid rent, utility charges or pet fees;

    (c) cleaning costs of the Premises if left unclean;

    (d) the cost to remove and dispose of any personal property;

    (e) late fees and any other unpaid fees, costs and charges referenced herein; and

    (f) the cost to cure any other default of Tenant hereunder.

2. Any deposit unclaimed by Tenant, as well as any check outstanding, shall be forfeited by Tenant after a period of 180 days as permitted by applicable law.

## WAIVER OF EXEMPTIONS:

**Initials of Tenant**

Tenant hereby waives Tenant's exemption of personal property from attachment to satisfy any judgment rendered against Tenant in favor of Lessor arising from any action by Lessor to protect Lessor's rights under this Lease.

## PERSONAL PROPERTY

**Initials of Tenant**

If Tenant leaves any personal property in the Premises after the termination of this Lease for any reason whatsoever, Lessor has no duty to store or protect said personal property and is entitled to dispose of said personal property without obligation at Tenant's expense

## [SIGNATURE PAGE FOLLOWS]

Initials: _____

Document digitally signed using RENTCafe eSignature services. Document ID:

05/26/2022

_____        _____
Tenant Signature                        Date Signed
                                        05/26/2022

_____        _____
Tenant Signature                        Date Signed

_____        _____
Tenant Signature                        Date Signed

_____        _____
Tenant Signature                        Date Signed

_____        _____
Tenant Signature                        Date Signed

_____        _____
Guarantor Signature                     Date Signed

_____        _____
as Agent for Lessor                     Date Signed

Initials: _____

_____

Document digitally signed using RENTCafe eSignature services. Document ID: ▮

# HOA RULES AND REGULATIONS ADDENDUM

**[See attached]**

Initials: _____

_____

Document digitally signed using RENTCafe eSignature services. Document ID: ██████

**Resident Ledger**



# EXHIBIT B

**Date: 07/01/2022**

| Code | | | Property | | Lease From | 12/01/2020 |
|---|---|---|---|---|---|---|
| Name | Christy Dahlen | | Unit | | Lease To | 11/30/2021 |
| Address | 4941 State Road 73 | | Status | Eviction | Move In | 11/29/2019 |
| | | | Rent | 1785.00 | Move Out | 12/31/2099 |
| City | Marshall, WI 53559 | | Phone (H) | | Phone (W) | |

| Date | Chg Code | Post Month | Description | Charge | Payment | Balance |
|---|---|---|---|---|---|---|
| 11/29/2019 | SECDEP | 06/2020 | :Posted by QuickTrans (SECDEP) | 2,550.00 | | 2,550.00 |
| 11/29/2019 | | 06/2020 | chk# :QuickTrans :Posted by QuickTrans | | 2,550.00 | 0.00 |
| 06/15/2020 | RENT | 07/2020 | WRI Ledger Bal Transfer (06/2020) | 850.00 | | 850.00 |
| 06/15/2020 | RENT | 07/2020 | WRI Ledger Bal Transfer (06/2020) | 1,700.00 | | 2,550.00 |
| 06/15/2020 | LATEFEE | 07/2020 | WRI Ledger Bal Transfer (06/2020) | 220.00 | | 2,770.00 |
| 07/01/2020 | RENT | 07/2020 | Rent (07/2020) | 1,700.00 | | 4,470.00 |
| 07/09/2020 | | 07/2020 | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 850.00 | 3,620.00 |
| 07/09/2020 | | 07/2020 | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services NSFed by ctrl#    Returned by the bank | | 851.00 | 2,769.00 |
| 07/15/2020 | NSFFEE | 07/2020 | Returned check charge | 35.00 | | 2,804.00 |
| 07/15/2020 | | 07/2020 | chk# :ACH-WEB NSF receipt Ctrl#    Returned by the bank | | (851.00) | 3,655.00 |
| 07/28/2020 | | 07/2020 | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 850.00 | 2,805.00 |
| 07/31/2020 | | 07/2020 | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 850.00 | 1,955.00 |
| 08/01/2020 | RENT | 08/2020 | Rent (08/2020) | 1,700.00 | | 3,655.00 |
| 08/17/2020 | CONMAINT | 08/2020 | Reimbursement for water pump | (175.00) | | 3,480.00 |
| 08/20/2020 | | 08/2020 | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 675.00 | 2,805.00 |
| 09/01/2020 | RENT | 09/2020 | Rent (09/2020) | 1,700.00 | | 4,505.00 |
| 09/02/2020 | LATEFEE | 09/2020 | Removal of late fee from transfer | (220.00) | | 4,285.00 |
| 09/02/2020 | RENT | 09/2020 | Tenant paid in Propertyware, balance transferred over incorrectly | (2,550.00) | | 1,735.00 |
| 09/04/2020 | | 09/2020 | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 850.00 | 885.00 |
| 10/01/2020 | RENT | 10/2020 | Rent (10/2020) | 1,700.00 | | 2,585.00 |
| 10/01/2020 | | 10/2020 | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 885.00 | 1,700.00 |
| 10/11/2020 | | 10/2020 | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 850.00 | 850.00 |
| 10/31/2020 | | 10/2020 | chk#    Debit Card On-Line Payment ; Roommate TIMOTHY CALLAHAN    ) ; Mobile Web - Resident Services | | 850.00 | 0.00 |
| 11/01/2020 | RENT | 11/2020 | Rent (11/2020) | 1,700.00 | | 1,700.00 |
| 11/09/2020 | | 11/2020 | chk#    Debit Card On-Line Payment ; Web - Resident Services | | 850.00 | 850.00 |
| 11/19/2020 | | 11/2020 | chk#    Debit Card On-Line Payment ; Roommate TIMOTHY CALLAHAN    ) ; Mobile Web - Resident Services | | 850.00 | 0.00 |
| 12/01/2020 | RENT | 12/2020 | Rent (12/2020) | 1,700.00 | | 1,700.00 |
| 12/11/2020 | | 12/2020 | chk#    Debit Card On-Line Payment ; Roommate TIMOTHY CALLAHAN    ) ; Mobile Web - Resident Services | | 893.00 | 807.00 |
| 12/27/2020 | | 12/2020 | chk#    Debit Card On-Line Payment ; Roommate TIMOTHY CALLAHAN    ) ; Mobile Web - Resident Services | | 607.00 | 200.00 |
| 12/27/2020 | | 12/2020 | chk#    Debit Card On-Line Payment ; Roommate TIMOTHY CALLAHAN    ) ; Mobile Web - Resident Services | | 200.00 | 0.00 |

| Date | Code | Period | Description | Charge | Payment | Balance |
|---|---|---|---|---|---|---|
| 01/01/2021 | RENT | 01/2021 | Rent (01/2021) | 1,785.00 | | 1,785.00 |
| 01/07/2021 | | 01/2021 | chk# ████ Debit Card On-Line Payment ; Roommate TIMOTHY CALLAHAN (████) ; Mobile Web - Resident Services | | 895.00 | 890.00 |
| 01/25/2021 | | 01/2021 | chk# ████ Debit Card On-Line Payment ; Roommate TIMOTHY CALLAHAN (████) ; Mobile Web - Resident Services | | 890.00 | 0.00 |
| 02/01/2021 | RENT | 02/2021 | Rent (02/2021) | 1,785.00 | | 1,785.00 |
| 02/06/2021 | LATEFEE | 02/2021 | Late Charges | 100.00 | | 1,885.00 |
| 02/06/2021 | | 02/2021 | chk# ████ Debit Card On-Line Payment ; Roommate TIMOTHY CALLAHAN (████) ; Mobile Web - Resident Services | | 1,000.00 | 885.00 |
| 02/07/2021 | | 02/2021 | chk# ████ Debit Card On-Line Payment ; Roommate TIMOTHY CALLAHAN (████) ; Mobile Web - Resident Services | | 885.00 | 0.00 |
| 03/01/2021 | RENT | 03/2021 | Rent (03/2021) | 1,785.00 | | 1,785.00 |
| 03/06/2021 | LATEFEE | 03/2021 | Late Charges | 100.00 | | 1,885.00 |
| 03/17/2021 | | 03/2021 | chk# ████ Debit Card On-Line Payment ; Roommate TIMOTHY CALLAHAN (████) ; Mobile Web - Resident Services | | 1,885.00 | 0.00 |
| 04/01/2021 | RENT | 04/2021 | Rent (04/2021) | 1,785.00 | | 1,785.00 |
| 04/03/2021 | | 04/2021 | chk# ████ Debit Card On-Line Payment ; Roommate TIMOTHY CALLAHAN (████) ; Mobile Web - Resident Services | | 1,785.00 | 0.00 |
| 05/01/2021 | RENT | 05/2021 | Rent (05/2021) | 1,785.00 | | 1,785.00 |
| 05/06/2021 | LATEFEE | 05/2021 | Late Charges :Reversed by Charge Ctrl# ████ | 100.00 | | 1,885.00 |
| 05/06/2021 | LATEFEE | 06/2022 | :Reverse Charge Ctrl# ████ Reversing late fees, resident rec'd rental assistance | (100.00) | | 1,785.00 |
| 06/01/2021 | RENT | 06/2021 | Rent (06/2021) | 1,785.00 | | 3,570.00 |
| 06/03/2021 | | 06/2021 | chk# ████ Debit Card On-Line Payment ; Roommate TIMOTHY CALLAHAN (████) ; Mobile Web - Resident Services | | 1,885.00 | 1,685.00 |
| 06/06/2021 | LATEFEE | 06/2021 | Late Charges :Reversed by Charge Ctrl# ████ | 100.00 | | 1,785.00 |
| 06/06/2021 | LATEFEE | 06/2022 | :Reverse Charge Ctrl# ████ Reversing late fees, resident rec'd rental assistance | (100.00) | | 1,685.00 |
| 07/01/2021 | RENT | 07/2021 | Rent (07/2021) | 1,785.00 | | 3,470.00 |
| 07/06/2021 | LATEFEE | 07/2021 | Late Charges :Reversed by Charge Ctrl# ████ | 100.00 | | 3,570.00 |
| 07/06/2021 | LATEFEE | 06/2022 | :Reverse Charge Ctrl# ████ Reversing late fees, resident rec'd rental assistance | (100.00) | | 3,470.00 |
| 08/01/2021 | RENT | 08/2021 | Rent (08/2021) | 1,785.00 | | 5,255.00 |
| 08/01/2021 | | 08/2021 | chk# ████ Debit Card On-Line Payment ; Roommate TIMOTHY CALLAHAN (████) ; Mobile Web - Resident Services | | 999.00 | 4,256.00 |
| 08/01/2021 | | 08/2021 | chk# ████ Debit Card On-Line Payment ; Roommate TIMOTHY CALLAHAN (████) ; Mobile Web - Resident Services | | 900.00 | 3,356.00 |
| 08/06/2021 | LATEFEE | 08/2021 | Late Charges :Reversed by Charge Ctrl# ████ | 100.00 | | 3,456.00 |
| 08/06/2021 | LATEFEE | 06/2022 | :Reverse Charge Ctrl# ████ Reversing late fees, resident rec'd rental assistance | (100.00) | | 3,356.00 |
| 09/01/2021 | RENT | 09/2021 | Rent (09/2021) | 1,785.00 | | 5,141.00 |
| 09/06/2021 | LATEFEE | 09/2021 | Late Charges :Reversed by Charge Ctrl# ████ | 100.00 | | 5,241.00 |
| 09/06/2021 | LATEFEE | 06/2022 | :Reverse Charge Ctrl# ████ Reversing late fees, resident rec'd rental assistance | (100.00) | | 5,141.00 |
| 10/01/2021 | RENT | 10/2021 | Rent (10/2021) | 1,785.00 | | 6,926.00 |
| 10/06/2021 | LATEFEE | 10/2021 | Late Charges :Reversed by Charge Ctrl# ████ | 100.00 | | 7,026.00 |
| 10/06/2021 | LATEFEE | 06/2022 | :Reverse Charge Ctrl# ████ Reversing late fees, resident rec'd rental assistance | (100.00) | | 6,926.00 |
| 11/01/2021 | RENT | 11/2021 | Rent (11/2021) | 1,785.00 | | 8,711.00 |
| 11/06/2021 | LATEFEE | 11/2021 | Late Charges :Reversed by Charge Ctrl# ████ | 100.00 | | 8,811.00 |
| 11/06/2021 | LATEFEE | 06/2022 | :Reverse Charge Ctrl# ████ Reversing late fees, resident rec'd rental assistance | (100.00) | | 8,711.00 |
| 12/01/2021 | RENT | 12/2021 | Rent (12/2021) | 1,785.00 | | 10,496.00 |
| 12/06/2021 | LATEFEE | 12/2021 | Late Charges :Reversed by Charge Ctrl# ████ | 100.00 | | 10,596.00 |

| 12/06/2021 | LATEFEE | 06/2022 | :Reverse Charge Ctrl# ▮▮▮  Reversing late fees, resident rec'd rental assistance | (500.00) | | 12,495.00 |
|---|---|---|---|---|---|---|
| 01/01/2022 | RENT | 01/2022 | Rent (01/2022) | 1,785.00 | | 12,281.00 |
| 01/06/2022 | LATEFEE | 01/2022 | Late Charges :Reversed by Charge Ctrl# ▮▮▮ | 100.00 | | 12,381.00 |
| 01/06/2022 | LATEFEE | 06/2022 | :Reverse Charge Ctrl# ▮▮▮  Reversing late fees, resident rec'd rental assistance | (100.00) | | 12,281.00 |
| 02/01/2022 | RENT | 02/2022 | Rent (02/2022) | 1,785.00 | | 14,066.00 |
| 02/06/2022 | LATEFEE | 02/2022 | Late Charges :Reversed by Charge Ctrl# ▮▮▮ | 100.00 | | 14,166.00 |
| 02/06/2022 | LATEFEE | 06/2022 | :Reverse Charge Ctrl# ▮▮▮  Reversing late fees, resident rec'd rental assistance | (100.00) | | 14,066.00 |
| 02/11/2022 | | 02/2022 | chk# ▮▮▮ | | 11,296.00 | 2,770.00 |
| 03/01/2022 | RENT | 03/2022 | Rent (03/2022) | 1,785.00 | | 4,555.00 |
| 04/01/2022 | RENT | 04/2022 | Rent (04/2022) | 1,785.00 | | 6,340.00 |
| 05/01/2022 | RENT | 05/2022 | Rent (05/2022) | 1,785.00 | | 8,125.00 |
| 05/06/2022 | LATEFEE | 05/2022 | Late Charges | 100.00 | | 8,225.00 |
| 06/01/2022 | RENT | 06/2022 | Rent (06/2022) | 1,785.00 | | 10,010.00 |
| 06/06/2022 | LATEFEE | 06/2022 | Late Charges | 100.00 | | 10,110.00 |
| 07/01/2022 | RENT | 07/2022 | Rent (07/2022) | 1,785.00 | | 11,895.00 |